IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID ROBERT BENTZ,
#S-03210,

Plaintiff,

vs.                                        Case No. 18-cv-1064-DRH

MR. MULHOLLAND,
WILLIAM QUALLS,
JASON FURLOW,
MASON YANKEY,
DEAN GROSS,
KRISTA ALLSUP,
M. SIDDIQUI,
DR. SHAH,
MIKE MOLDENHAUER,
JACQUELINE LASHBROOK,
ALEX JONES,
KELLY PIERCE,
SGT. JAMES,
C/O ANDERSON,
SHERRY BENTON,
CHRISTA MAHNKEN,
TAMERA TURNER,
HOLLY HAWKINS,
T. SMITH,
K. MAUE,
DERRICK THREADGILL,
DEDE SHORT,
JASON WALLER,
MISS MEARS,
CHRISTOPHER FRITSCHE,
MENARD CORRECTIONAL CENTER,
WEXFORD HEALTH SERVICE,
ILLINOIS DEPARTMENT OF CORRECTIONS,
C/O HOLDER (JOHN DOE #1),
C/O JOHN DOE #2,
NURSE JANE DOE #5,
NURSE JANE DOE #6,
NURSE JANE DOE #7,

**NURSE JOHN DOE #8,**
**NURSE JANE DOE #9,**
**JOHN DOE #10,**
**and UNIDENTIFIED JOHN AND JANE DOES,**

**Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff David Robert Bentz, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard. (Doc. 1). In the Complaint, Plaintiff alleges that prison officials failed to treat his neck injury and broken finger at Menard in 2017-18. (Doc. 1, pp. 1-32). He also maintains that prison officials harassed him. *Id.* Plaintiff asserts claims against more than three dozen officials for violating his rights under the First, Eighth, and Fourteenth Amendments, as well as Illinois state law. *Id.* He seeks declaratory judgment, monetary damages, and injunctive relief. (Doc. 1, pp. 33-34).

The Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.

## The Complaint

Plaintiff is a long-term general population prisoner, who is well-known to this Court. (Doc. 1, p. 6). He has filed dozens of civil rights actions—primarily in this District during the past four years. (Doc. 1, p. 5). In his Complaint, Plaintiff asserts that he was denied medical care for a broken finger and an aggravated neck injury at Menard in 2017-18. (Doc. 1, pp. 1-32). He also complains of ongoing harassment by certain staff members during this same time period. *Id*. Plaintiff brings claims against more than three dozen defendants under the First, Eighth, and Fourteenth Amendments and Illinois state law. *Id*.

According to the allegations in the Complaint, Plaintiff broke his left ring finger on July 29, 2017, after it "somehow got caught" in the bars of his cell door. (Doc. 1, p. 7). Nurse Jane Doe #5 met with him on August 2, 2017. *Id*. At the time, the prison was on lockdown. *Id*. The nurse informed Plaintiff that his finger appeared to be broken, but she would not send him for an x-ray because

Wexford Health Service ("Wexford") and Menard Correctional Center ("Menard") did not deem broken fingers to be sufficiently serious. *Id*. Nurse Jane Doe #5 also told Plaintiff that he would have to wait until lockdown ended to see a doctor. *Id*. In the meantime, she prepared a makeshift splint for Plaintiff's broken finger using a tongue depressor and tape. (Doc. 1, pp. 7-8).

Later the same day, the Orange Crush Tactical Team conducted a shakedown of the gallery where Plaintiff was housed. (Doc. 1, p. 8). In the process, Plaintiff was cuffed behind his back, ordered to put his head down, escorted to the chapel, and forced to sit in a chair for up to two hours. *Id*. This caused further pain in his finger and aggravated an old neck injury. *Id*. When Plaintiff asked John Doe #1 (C/O Holder) for permission to see a nurse, the officer took his splint and told Plaintiff to "shut the fuck up." *Id*.

Plaintiff returned to his cell two hours later and learned that Officer Smith had confiscated his extra splint and pain medication. (Doc. 1, p. 8). Plaintiff noticed the tongue depressor and tape on the floor outside of his cell. *Id*. He informed Officer Mulholland about his broken finger and asked him to retrieve the items. *Id*. Plaintiff also told Mulholland that his pain medication was taken during the shakedown, and his old neck injury was aggravated during his trip to the chapel. (Doc. 1, pp. 8-9). Plaintiff asked the officer to help him get medical care for both injuries. *Id*.

Mulholland agreed that Plaintiff's finger appeared to be broken but refused to assist Plaintiff, saying that he "did not have time." (Doc. 1, p. 9). The officer

told Plaintiff he "would just have to suffer." *Id*. When Plaintiff made the same request of Mulholland the following day, the officer threatened to discipline him for making any additional requests for medical treatment. *Id*. Plaintiff submitted another sick call request on August 3, 2017. *Id*.

On August 6, 2017, Nurse Jane Doe #5 again met with Plaintiff to discuss his request for treatment of the broken finger and chronic neck pain. (Doc. 1, p. 9). She gave Plaintiff a 3-day supply of ibuprofen (200 mg) to "hold Plaintiff over" until he could meet with a doctor. *Id*.

On August 7, 2017, Plaintiff asked Counselor Allsup to assist him in obtaining medical treatment for his broken finger and aggravated neck injury. (Doc. 1, p. 9). Allsup told Plaintiff that he was "not entitled to any medical care." *Id*. On August 10, 2017, Plaintiff directed the same request to Sergeant McClure, Officer Mulholland, Officer John Doe #2, and other unidentified individuals (John and Jane Does), to no avail. (Doc. 1, p. 10).

On August 11, 2017, Plaintiff again asked Mulholland for medical care. (Doc. 1, p. 10). The officer refused to help. *Id*. In addition, Mulholland took Plaintiff's two call passes, wadded them up, and threw them at Plaintiff's face. *Id*. Plaintiff reiterated the same request later the same day as Mulholland escorted him to the chapel for a legal call. *Id*. Mulholland threatened to send Plaintiff to segregation if he requested medical care "one more 'fucking time.'" *Id*.

The same day, Plaintiff placed an emergency grievance for Warden Jacqueline Lashbrook in the institutional mail. (Doc. 1, p. 10). Warden Alex

Jones denied the grievance a week later, and Plaintiff resubmitted it as a non-emergency grievance and appealed the decision. (Doc. 1, pp. 11, 14). In addition, Plaintiff sent a virtually identical non-emergency grievance in a sealed envelope to Allsup. (Doc. 1, p. 10).

On August 12, 2017, Mulholland again threatened Plaintiff with punishment for "bogus" rule violations if he continued to request medical care. (Doc. 1, p. 10). Plaintiff submitted another sick call slip on August 14, 2017, and Plaintiff was seen by Nurse Jane Doe #6 two days later. (Doc. 1, p. 11). She informed Plaintiff that his finger was broken, but nothing would be done about it. *Id.* When Plaintiff asked for more pain medication for his aggravated neck injury, she refused to give him anything for the pain. *Id.*

Plaintiff was called to the health care unit ("HCU") for an appointment with Moldenhauer on August 16, 2017. (Doc. 1, p. 11). When Plaintiff arrived at the HCU, Officer Gross turned him away. *Id.* Plaintiff returned to his cell, and Officer Maue ordered him to go to the legal exchange. *Id.* Maue assured Plaintiff that he could return to the HCU to meet with Moldenhauer afterwards. *Id.* When Plaintiff returned from legal exchange and asked to see Moldenhauer, Maue refused to let him visit the HCU. *Id.* Plaintiff placed a medical request slip into the sick call box later that day, seeking medical care for his broken finger and aggravated neck injury. *Id.*

On August 18, 2017, Plaintiff met with Nurse Jane Doe #6 about both of his complaints. (Doc. 1, p. 12). She agreed to arrange an appointment for

Plaintiff with Doctor Siddiqui, but did nothing to address his complaints in the meantime. *Id.* Plaintiff submitted two additional medical requests for the diagnosis and treatment of his finger and neck on August 20 and 22, 2017. *Id.* No one responded. *Id.*

Plaintiff asked Officer Furlow for medical care as they passed by the HCU on the way to and from the legal exchange on August 23, 2017. (Doc. 1, p. 13). Furlow told Plaintiff that he should not have filed the grievance dated August 11, 2017. *Id.* He then threatened Plaintiff, stating, "Fucking file another lawsuit bitch and you'll wind up dead like that guy in North Two." *Id.* Furlow was referring to another inmate who was beaten to death by correctional officers six weeks earlier. *Id.* The officer continued to "threaten, harass, and assault" Plaintiff that day on the way to and from yard. *Id.* Officer Fritsche led Plaintiff back to his cell, as Furlow followed behind Plaintiff "pushing and shoving" him, "punching him in the back," and grabbing his buttocks at least twice. *Id.* Fritsche later asked Plaintiff "what that was all about." *Id.* The next day, Furlow and several unidentified defendants (John Does) threatened to assault Plaintiff and made "sexual gestures" toward him during lunch line movement, in the HCU, and at Plaintiff's cell. (Doc. 1, pp. 13-14).

Plaintiff met with Moldenhauer about his medical issues on August 24, 2017. (Doc. 1, p. 14). Although Moldenhauer assured Plaintiff that his request for an x-ray would be denied, Moldenhauer nevertheless submitted a request for one. *Id.* Moldenhauer also agreed to prescribe Plaintiff muscle relaxers and pain

medication for his neck injury. *Id.* Plaintiff received a 5-month prescription for meloxicam (7.5 mg). (Doc. 1, p. 15). He also signed a receipt for a 1-month supply of the medication with a prescription refill due on September 16, 2017. *Id.* He received one tablet per day from an unknown nurse. *Id.*

On August 28, 2017, Plaintiff sent an emergency grievance to Warden Lashbrook, a regular grievance to Allsup, and a medical request slip. (Doc. 1, p. 15). In the grievances, he complained of "excessive force; assault and battery; retaliation; denial of medical care; conspiracy; state law violations; sexual harassment; state and federal constitutional rights violations; and other." *Id.* In the medical request slip, Plaintiff explained that he had not yet received the muscle relaxers, and he asked that the meloxicam be replaced with ibuprofen (600 mg). *Id.*

The same day, Officers Yankey and Furlow threatened Plaintiff with excessive force and sexually harassed him without provocation on the way to and from lunch. (Doc. 1, p. 15). The next day, the same officers and several other unknown officers (John Does) again threatened to beat Plaintiff and sexually harassed him when he was released from his cell for an x-ray of his finger. *Id.*

Late on August 29, 2017, Nurse Jane Doe #7 informed Plaintiff that the x-ray showed a fracture in his left ring finger and a chipped bone. (Doc. 1, p. 16). She provided him with another makeshift splint, consisting of a tongue depressor and tape. *Id.* The nurse also told Plaintiff that she would speak with Moldenhauer about a treatment plan. *Id.* Plaintiff asked her to request a change

in his medication from meloxicam to ibuprofen and check on the status of his prescription for muscle relaxers. *Id.* The nurse agreed to look into these issues, after reviewing Plaintiff's medical records and discovering that the muscle relaxers were never ordered. *Id.* Plaintiff received a 30-day pack of ibuprofen to replace his meloxicam on August 30, 2017. *Id.*

Officer Fritsche refused to let Plaintiff go to the legal exchange on August 30, 2017, despite the fact that Plaintiff faced numerous deadlines. (Doc. 1, p. 16). This was allegedly in retaliation for Plaintiff's grievances and numerous requests for medical care. *Id.*

On August 31, 2017, Plaintiff submitted a medical request slip for treatment of his broken finger and aggravated neck injury. (Doc. 1, p. 16). On the way to chow the same day, Furlow, Yankey, Gross, and McClure all threatened to "beat . . . Plaintiff's ass" or push him down the stairs. (Doc. 1, p. 17). They sexually harassed him, using gestures and remarks. *Id.* When he returned to his cell, Gross appeared and made sexual gestures, calling Plaintiff a "fag" and a "bitch." *Id.*

On September 1, 2017, Gary Bentz filed a complaint on Plaintiff's behalf with Dede Short and an unknown individual (John/Jane Doe) on the IDOC website. (Doc. 1, p. 17). Lashbrook and Short responded to the complaint two weeks later. (Doc. 1, p. 21). On September 2, 2017, Plaintiff was placed on "deadlock" in his cell "for no reason other than retaliation." (Doc. 1, p. 17). He was then cuffed behind the back and taken to the HCU for an appointment with

an unidentified nurse. *Id.* He was forced to wait for more than an hour to see the nurse. *Id.* When he was finally called to meet with her, Gross would not let the nurse speak with Plaintiff and instead ordered him to return to his cell. *Id.* While doing so, Gross, Yankey, and unidentified individuals (John Does) pushed and shoved Plaintiff into the wall, telling him that he would not be getting any medical care or lunch and would remain on deadlock for filing grievances and lawsuits against the defendants. *Id.*

He was nevertheless taken off of deadlock and returned to the HCU at noon. (Doc. 1, p. 18). There, Plaintiff met with Doctor Shah and requested treatment for his broken finger and aggravated neck injury. *Id.* Doctor Shah told Plaintiff that he was not seeing him for his neck problem. *Id.* He further stated that Plaintiff's finger was not broken. *Id.* The doctor took Plaintiff's makeshift splint from him. *Id.* Plaintiff sent an emergency grievance to Lashbrook and a nearly identical grievance to Allsup on September 2, 2017. (Doc. 1, pp. 18-19). He also submitted a request for an MRI and muscle relaxers. (Doc. 1, p. 19).

On September 4, 2017, Yankey and Furlow harassed Plaintiff and made sexual gestures toward him without any provocation by Plaintiff. (Doc. 1, p. 19).

On September 6, 2017, Plaintiff again requested treatment of his broken finger and chronic neck pain in a medical request slip. (Doc. 1, p. 19). The prison subsequently went on lockdown, and the Orange Crush Tactical Team again conducted a shakedown of Plaintiff's cell. *Id.* He remained cuffed behind the back for at least two hours and was forced to sit in a chair in the prison's

chapel. *Id.* This further aggravated Plaintiff's injuries. *Id.* He filed a new round of medical requests slips and grievances on September 8 and 10, 2017. (Doc. 1, p. 20). Furlow threatened to beat Plaintiff's ass on September 10 and 12, 2017. *Id.*

When Plaintiff saw Lashbrook making rounds on September 11, 2017, he told the warden about all of his untreated medical issues. (Doc. 1, p. 20). She told him to "stop suing staff and stop filing grievances and things might get done." *Id.* Plaintiff submitted another medical request slip the same day. (Doc. 1, p. 21).

Nurse Jane Doe #5 met with Plaintiff on September 13, 2017. (Doc. 1, p. 21). The nurse informed Plaintiff that his finger was fractured, and a piece of bone was chipped. *Id.* She examined his neck and agreed to request muscle relaxers and pain medication. *Id.*

On September 14, 2017, a correctional officer handcuffed Plaintiff behind his back and took him to the HCU for a second x-ray of his finger. (Doc. 1, p. 21). On the way, Furlow harassed Plaintiff by bending down and placing his head near Plaintiff's crotch. *Id.* When Plaintiff stepped back, Furlow shoved him into the bars of the sergeants' cage. (Doc. 1, p. 22).

The second x-ray confirmed that Plaintiff's finger was fractured and had not yet begun to heal. (Doc. 1, p. 21). Nurse Jane Doe #7 informed Plaintiff of the results. *Id.* However, she did not treat him. *Id.*

On the way to the shower on September 16, 2017, Yankey and Gross both sexually harassed and threatened Plaintiff with excessive force. (Doc. 1, p. 22).

In response to still another medical request slip submitted by Plaintiff on September 19, 2017, Moldenhauer met with him the following day. (Doc. 1, p. 22). The nurse practitioner agreed to request another x-ray of his finger in two weeks and again in four weeks, in order to determine whether it was healing. *Id.* Moldenhauer also put in a request for Plaintiff to see a doctor. *Id.* Otherwise, nothing was done to treat his finger or neck. *Id.*

During this call pass, Yankey again harassed Plaintiff. (Doc. 1, p. 22). This time, he told Plaintiff to bend over because he would "love to stick his (Yankey's) dick into . . . Plaintiff's ass." *Id.* Yankey also told Plaintiff that he would love to "suck his dick." *Id.*

On September 22, 24, and 28, 2017, Plaintiff again submitted medical request slips for treatment of his finger and neck. (Doc. 1, p. 23). He then filed a grievance dated September 25, 2017. *Id.* Plaintiff showed Allsup his finger three days later and requested treatment for the obvious injury and his chronic neck pain. *Id.* Allsup acknowledged the seriousness of Plaintiff's medical needs but refused to do anything about them. *Id.*

Nurse Jane Doe #6 met with Plaintiff on September 30, 2017. (Doc. 1, p. 24). After charging him $5.00, she refused to treat Plaintiff, explaining that a broken bone is not a "chronic issue." *Id.* Plaintiff's family filed another complaint. *Id.* Plaintiff was then scheduled to meet with Doctor Siddiqui on

October 2, 2017. *Id.* The doctor agreed to order another x-ray of Plaintiff's finger and prescribe him a 3-month supply of muscle relaxers and ibuprofen (600 mg) (3 times per day). *Id.* Other than that, the doctor said there was nothing he could do because Wexford would not approve additional treatment. *Id.* In the days that followed, Plaintiff was repeatedly sexually harassed by Gross, Furlow, and Yankey. *Id.*

Nurse Jane Doe #7 took another x-ray of Plaintiff's left ring finger on October 10, 2017. (Doc. 1, p. 24). Furlow harassed him and threatened to beat him on the way to and from the HCU. (Doc. 1, p. 25). The following day, Furlow grabbed Plaintiff just above the elbow and pushed and pulled his arm, causing bruising. *Id.* At the same time, Furlow encouraged Plaintiff to "swing on him" so that Furlow "could beat Plaintiff's ass." *Id.* Furlow then said, "I want to shove my dick down your thro[at]." *Id.* Plaintiff filed an emergency grievance on this date, and it was denied by Lashbrook on November 2, 2017. (Doc. 1, p. 27).

On October 12, 2017, Furlow and Gross threatened to "beat the shit out of" Plaintiff. (Doc. 1, p. 25). Sergeant James joined in the harassment of Plaintiff on that date. *Id.* Plaintiff sent a letter to the John Howard Association and also asked to speak with someone in mental health. *Id.*

On October 14, 2017, Lieutenant Qualls threatened to beat Plaintiff as well, after telling him that he should not have sued the lieutenant. (Doc. 1, p. 26). The same day, Yankey, Gross, and Furlow also threatened to beat Plaintiff and sexually harassed him. *Id.* The threats by Gross and harassment by Furlow

continued on October 17, 2017. *Id.* The next day, Furlow, Gross, and Yankey blew kisses at Plaintiff and called him a "fag" and "their girl." *Id.* Gross engaged in similar conduct on October 19, 2017. *Id.* On October 20, 2017, Gross stopped by Plaintiff's cell, placed a key in the lock, and told Plaintiff to exit the cell so that he could beat his ass. *Id.* Plaintiff refused to exit his cell, and Gross left. *Id.*

On October 20, 2017, Gross, Fritsche, and McClure refused to let Plaintiff go to the law library, despite knowing about several impending court deadlines. (Doc. 1, p. 26). They did this to retaliate against Plaintiff for filing lawsuits. *Id.* On October 22, 2017, Yankey again harassed Plaintiff in the lunch line. *Id.* Furlow harassed Plaintiff the following day on the way to and from another x-ray. (Doc. 1, p. 27).

Plaintiff submitted a written request for more ibuprofen and muscle relaxers on October 23, 2017. (Doc. 1, p. 27). Moldenhauer met with Plaintiff to discuss the results of his x-ray on October 24, 2017. *Id.* Moldenhauer allegedly provided conflicting information about Plaintiff's finger, telling him that his finger had healed, that his finger was fractured but healing, and that his finger was still broken. *Id.* Plaintiff was scheduled for another x-ray in two weeks. *Id.*

Christa Mahnken authorized an appointment with Doctor Siddiqui to discuss Plaintiff's broken finger on November 10, 2017. (Doc. 1, p. 28). When Plaintiff met with the doctor, he told Plaintiff that there was nothing he could do about the old injury. *Id.* Doctor Siddiqui asked Plaintiff why he did not seek

medical treatment sooner. *Id.* Plaintiff submitted a written request for prescription refills of ibuprofen (600 mg) and muscle relaxers the same day. *Id.*

Plaintiff spoke with Allsup about the harassment and threats made by Furlow, Yankey, Gross, and James on November 20, 2017. (Doc. 1, p. 28). Allsup refused to do anything, saying "tough shit." *Id.* When Plaintiff also complained about his difficulties securing medical treatment, Allsup told him that she had nothing to do with medical and would do nothing to help him because he sued her. *Id.*

On November 30, 2017, the North Uppers Cell House was again subject to a shakedown by the Orange Crush Tactical Team. (Doc. 1, p. 28). Anderson removed Plaintiff's personal property from his cell, including a Walkman, legal materials, writing supplies, ibuprofen, and muscle relaxers. (Doc. 1, pp. 28-29). Plaintiff submitted another medical request on December 1, 2017, asking for more ibuprofen and muscle relaxers. (Doc. 1, p. 29). Nurse Jane Doe #9 met with Plaintiff in response to this request on December 5, 2017, but she "completely refused to do anything." *Id.* That day on the way to and from the shower, Threadgill threatened to beat Plaintiff for filing grievances and told Plaintiff to expect nothing from him. *Id.* On the way to the chow hall on December 6, 2017, Threadgill threatened to "beat the holy shit" out of Plaintiff for no reason at all. *Id.*

On December 7, 2017, an internal affairs officer named Lieutenant/Major John Doe #10 interviewed Plaintiff about a grievance he filed on September 2,

2017. (Doc. 1, p. 29). This interview was completed at the request of the Administrative Review Board. *Id.*

On December 20, 2017, Furlow approached Plaintiff at his cell and threatened to beat Plaintiff's "ass and 'fuck' Plaintiff's things up." (Doc. 1, p. 29). Furlow then ordered Plaintiff to pack his "shit" because he was moving. *Id.* As Plaintiff exited his cell, Furlow, Yankey, and Gross stood nearby harassing him in an attempt to provoke Plaintiff and "justify beating Plaintiff's ass." *Id.* When Plaintiff requested assistance, Furlow, Yankey, Gross, and James threw his personal property down the stairs onto the first floor. *Id.* They told Plaintiff that he should not have filed grievances to complain about them. *Id.* The harassment and threats continued for more than an hour. *Id.*

Plaintiff was supposed to take a legal call during this time period, but Furlow would not allow him to do so. (Doc. 1, p. 30). He took Plaintiff's call pass and then slammed his head into the bars of his cell, before forcing Plaintiff to sign a slip of paper indicating that he refused to take the legal call. *Id.*

Plaintiff was moved to the South Uppers Cell House. (Doc. 1, p. 30). He immediately requested medical attention for aggravated injuries. *Id.* Several unidentified officers (John Does) told Plaintiff to put in a sick call request, after refusing to get him medical attention. *Id.* For the next three months, through March 30, 2018, Plaintiff repeatedly submitted written requests for medical care to Jason Waller and several unidentified John and Jane Does "all to no avail." *Id.* On January 26, 2018, Plaintiff again met with Moldenhauer. (Doc. 1, p. 31).

When he asked for treatment of his broken finger and neck, Moldenhauer said, "You will have to sue me." *Id.* When Plaintiff met with Miss Mears in the presence of Jason Waller on March 30, 2018, she also refused to provide Plaintiff with any medical care after learning of a suit he filed against Maue. *Id.*

Wexford allegedly contracts with the IDOC and Menard to provide medical care to inmates. (Doc. 1, p. 31). Plaintiff claims that Wexford has a long history of maintaining poor medical records. *Id.* The private medical corporation is also responsible for creating written and unwritten policies that have resulted in the denial of adequate medical care to inmates. *Id.*

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to re-characterize the claims in the Complaint into the following enumerated counts:

**Count 1** - Eighth Amendment deliberate indifference claim against Defendants for failing to diagnose and/or treat Plaintiff's broken left ring finger and aggravated neck injury between July 29, 2017, and March 30, 2018.

**Count 2** - Eighth Amendment deliberate indifference claim against Defendants for subjecting Plaintiff to unprovoked harassment, in the form of threats of physical and sexual harm between August 2017 and December 2018.

**Count 3** - Eighth Amendment deliberate indifference claim against Defendants for subjecting Plaintiff to excessive force between August 2017 and December 2018.

**Count 4** - First Amendment retaliation claim against Defendants for taking adverse action against Plaintiff (*e.g.*, denying him

medical care, harassing him, and/or denying him access to the courts) between August 2017 and March 2018, all because he filed grievances and suits against Menard officials.

**Count 5** - First and/or Fourteenth Amendment claim against Defendants for denying Plaintiff access to the courts by preventing him from going to the legal exchange or legal call at various times between August and December 2017.

**Count 6** - Fourteenth Amendment claim against Defendants for depriving Plaintiff of a protected property interest without due process of law by taking or disposing of his personal property between August and December 2017.

**Count 7** - Fourteenth Amendment due process claim against Defendants for mishandling Plaintiff's grievances regarding inadequate medical care and harassment by prison officials between July 2017 and March 2018.

**Count 8 -** Common law conspiracy claim against Defendants for working together to violate Plaintiff's constitutional rights between July 2017 and March 2018.

**Count 9** - Illinois state law claims against Defendants for negligence, intentional infliction of emotional distress, "intentional and malicious action," slander, assault, battery, sexual assault and battery, and "other[s]."

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claims not identified above but encompassed by the allegations in the Complaint are considered dismissed without prejudice from this action.**

<u>**Claims Subject to Further Review**</u>

**Count 1**

The Eighth Amendment prohibits the cruel and unusual punishment of prisoners. U.S. CONST., amend VIII. It protects prisoners from conditions of

confinement that pose a substantial risk of serious harm to their health or safety. *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs such as food, medical care, sanitation, and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). All Eighth Amendment claims consist of an objective and a subjective element. *Wilson v. Seiter*, 501 U.S. 294, 302-04 (1991); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994).

In the medical context, the objective component requires the plaintiff to demonstrate that he suffered from a sufficiently serious medical condition. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A serious medical condition is one that is "diagnosed by a physician as requiring treatment, or [is] . . . so obvious a layperson would easily recognize the necessity for medical attention." *Id.* at 1372-73. *See also Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). Both medical conditions described by Plaintiff satisfy the objective component of this claim at screening. This includes Plaintiff's neck injury, which was being treated by a medical provider with prescription medication at the time the injury was aggravated, and his broken left ring finger, which was diagnosed but not treated. *See, e.g., Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (openly dislocated finger objectively serious); *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) (broken foot); *Duncan v. Duckworth*, 644 F.2d 653, 654 (7th Cir. 1981) (broken wrist).

The subjective component of this claim requires the plaintiff to demonstrate that each defendant responded to his serious medical condition with deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citations omitted). This is shown when a defendant realizes that a substantial risk of serious harm to the prisoner exists but disregards the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Negligence, or even gross negligence, does not constitute deliberate indifference. *Gayton*, 593 at 620. Upon review of the Complaint, the Court finds that the following defendants may have exhibited deliberate indifference to Plaintiff's broken finger and/or neck injury: Wexford, Furlow, Mulholland, Gross, Allsup, Siddiqui, Shah, Moldenhauer, Lashbrook, Short, Jones, Maue, Waller, Mears, McClure, Holder (John Doe #1), John Doe #2, Jane Doe #5, Jane Doe #6, Jane Doe #7, and Jane Doe #9. Count 1 shall receive further review against these defendants.

However, the allegations support no deliberate indifference claim against the remaining defendants, including Qualls, Yankey, Pierce, Benton, Mahnken, Turner, Hawkins, Menard,[1] IDOC, Smith, Threadgill, Fritsche, James, Anderson, Jane Doe #8, and John Doe #10. The Complaint either fails to develop a medical

---

[1] Menard and IDOC are not "persons" who are subject to a suit for money damages under § 1983, and Warden Lashbrook is already named in her official capacity in connection with the request for injunctive relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same). Both of these defendants shall be dismissed with prejudice.

needs claim against these defendants, does not suggest that each defendant knew about Plaintiff's medical needs, or fails to establish that each defendant engaged in any misconduct when addressing those needs. In addition, Plaintiff cannot proceed with a claim against the "Unidentified John and Jane Does, *et al.*" without identifying them with more particularity in the Complaint.[2] Count 1 shall be dismissed without prejudice against these defendants.

### Count 2

The Eighth Amendment also governs claims of harassment by prison officials, but isolated incidents of harassment typically support no Eighth Amendment claim. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). The Seventh Circuit Court of Appeals has indicated that "simple verbal harassment," when standing alone, does not amount to cruel and unusual punishment. *Id. See also Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) ("[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."). However, the Seventh Circuit has more recently clarified that "simple," when used in this context, really means "'fleeting,' too limited to have an impact." *Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015) (citing *DeWalt*, 224 F.3d at 612). When accompanied by actions which suggest that the harassment is persistent or results in pain (either physical or psychological), however, verbal harassment may support an Eighth Amendment

---

[2] Instead of referring to poorly defined groups of defendants, Plaintiff should instead refer to each individual in generic terms (e.g., John Doe #1, John Doe #2, etc.) so the Court can properly analyze the claims against each individual defendant. Plaintiff did so in reference to some, but not all, unknown defendants.

claim. *See, e.g., Hughes v. Farris*, 809 F.3d 330, 333 (7th Cir. 2015) (citing *Dobbey*, 574 F.3d at 445). *See also Beal*, 803 F.3d at 357-58 (verbal harassment accompanied by threats or gestures that increase likelihood of harm may support a claim).

The allegations in the Complaint support a claim at screening against the following individuals who allegedly engaged in a campaign of harassment against Plaintiff: Furlow, Yankey, Gross, James, Threadgill, Qualls, Allsup, McClure, and Lashbrook. However, the allegations support no claim against the remaining defendants, either because Plaintiff pointed to nothing more than a fleeting incident or no harassment at all by the defendant.

## Count 3

An Eighth Amendment claim of excessive force arises when a prison official uses force against an inmate in a manner that is malicious and sadistic rather than as part of a good faith effort to maintain or restore discipline. *See Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Factors that are considered relevant to the officer's state of mind include "the need for force, the amount of force used, the threat reasonably perceived by officers, efforts made to temper the severity of the force, and the extent of injuries caused by the force." *Caffey v. Maue*, 679 F. App'x 487, 491 (7th Cir. 2017) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012)). Plaintiff alleges that Furlow, Yankey, Gross, and several unidentified officers used excessive force against him on

several occasions between August and December 2017. (Doc. 1, pp. 1-32). He also claims that Lashbrook failed to intervene to prevent the use of force by Furlow, after Plaintiff filed a written complaint regarding an incident that occurred on October 11, 2017. As a result, Furlow used excessive force against him again on December 20, 2017. Count 3 shall proceed against Furlow, Yankey, and Gross for using excessive force against Plaintiff and against Lashbrook for failing to intervene and stop the use of force.[3] However, the Complaint names no other defendants in connection with this claim and/or states no claim against them, so Count 3 shall be dismissed without prejudice against all other defendants.

## Count 4

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, and this includes the right to file a grievance or lawsuit. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Pearson v. Wellborn*, 471 F.3d 732, 740 (7th Cir. 2006); *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt*, 224 F.3d at 618. To state a retaliation claim, a plaintiff must establish that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision

---

[3] Plaintiff cannot proceed with this claim against the poorly defined group of "John Doe" defendants, without identifying each individual in generic terms and setting forth allegations which demonstrate the individual's personal involvement in a constitutional deprivation.

to take the retaliatory action. *Bridges*, 557 F.3d at 546 (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).   A complaint states a retaliation claim when it sets forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman*, 226 F.3d at 573 (citation omitted).

The Complaint sets forth allegations that support a plausible retaliation claim against the following defendants arising from conduct that occurred on each of the following dates in 2017: Furlow (August 23 and December 20), Yankey (September 2 and December 20), Gross (September 2, October 20, and December 20), Allsup (November 20), Lashbrook (September 11), Threadgill (December 5), Fritsche (August 30), Mears (March 30), and James (December 20).   In an apparent attempt to deter Plaintiff from exercising his First Amendment rights, these defendants denied Plaintiff medical care, harassed him, or used excessive force against him, citing his overuse of the grievance process or the court system. Count 4 shall receive further review against these defendants.   However, the allegations do not support a retaliation claim against any other defendants at this stage, including the poorly defined group of "Unidentified John and Jane Doe's, et al." (Doc. 1, p. 1).

## Claims Subject to Dismissal

### Count 5

The Seventh Circuit uses a 2-part test to determine whether prison administrators have violated the right of access to the courts. *Lehn v. Holmes*,

364 F.3d 862, 868 (7th Cir. 2004).  First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).  Second, he must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868.

The Complaint supports no claim against any of the defendants for denying Plaintiff access to the courts.  Plaintiff mentions approximately three instances in which he was prevented from going to the legal exchange or legal call: (1) Fritsche denied him access to the legal exchange on August 30, 2017; (2) McClure, Gross, and Fritsche denied him access on October 20, 2017; and (3) Furlow, Yankey, and Gross denied him access to a legal call on December 20, 2017.  Although he alleges that these defendants knew he faced court deadlines, Plaintiff identified no detriment to any particular litigation caused by their actions.  In other words, he failed to satisfy a necessary component of this claim, even at screening.  *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993).  Accordingly, Count 5 shall be dismissed without prejudice against the defendants.

**Count 6**

Plaintiff claims that he lost certain personal property during several cell

shakedowns conducted by Officers Smith (August 2, 2017) and Anderson (November 30, 2017) and during a cell transfer by Officers Furlow, Yankey, Gross, and/or James (December 20, 2017). There is no cognizable civil rights claim for the deprivation of property under the Fourteenth Amendment where the state provides an adequate legal remedy. *Hudson v. Palmer,* 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). This is true whether the deprivation of property was intentional or accidental. *Id.* at 536 (intentional deprivations); *Parratt v. Taylor,* 451 U.S. 527, 539 (1981) (negligent deprivations); *Lunsford v. Bennett,* 17 F.3d 1574, 1583 n.5 (7th Cir. 1994); *Stewart v. McGinnis,* 5 F.3d 1031, 1035-36 (7th Cir. 1993), *cert. denied,* 114 S. Ct. 1075 (1994). The Seventh Circuit has held that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Because this state remedy is available, Plaintiff cannot maintain a constitutional claim for a deprivation of his property without due process of law under the Fourteenth Amendment against the defendants here. Further, he does not assert that he was denied due process of law in connection with this claim. Count 6 shall therefore be dismissed without prejudice to Plaintiff pursuing relief in the Illinois Court of Claims.

**Count 7**

The Complaint fails to state an independent Fourteenth Amendment due

process claim against any of the defendants, based on their alleged mishandling of Plaintiff's grievances. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, Count 7 does not survive preliminary review and shall be dismissed with prejudice against all of the defendants.

### Count 8

Plaintiff's conspiracy claim is undeveloped and therefore fails to pass muster under *Twombly*. To state a § 1983 conspiracy, Plaintiff must demonstrate a concerted effort between the parties, but it is not enough for the conspirators to share the same objective. Rather, a conspiracy requires an agreement, express or implied, to reach a desired result. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)). Plaintiff simply lists conspiracy as one of the claims he is pursuing against the defendants. He does not indicate why. Even at this stage, lists of claims – much like conclusory legal statements and/or threadbare recitals of the elements of a cause of action – are insufficient to support a § 1983 claim. *See* FED. R. CIV. P. 8(a)(2); *Twombly*, 550 U.S. at 555. Count 8 shall therefore be dismissed without prejudice against the defendants for failure to state a claim upon which relief may be granted.

### Count 9

Where a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C.

§ 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

The Court has original jurisdiction over this § 1983 action. In the opening paragraph of his Complaint, Plaintiff also asserts claims under Illinois law for negligence, intentional infliction of emotional distress, intentional and malicious action, slander, assault and battery, sexual assault and battery and "other[s]." (Doc. 1, p. 1). Presumably, the state law claims and federal claims arise from the same facts, giving rise to the Court's supplemental jurisdiction over those claims as well.

But beyond listing the state law claims in the opening paragraph, Plaintiff does not mention them elsewhere in the Complaint. He must set forth basic allegations in support of each state law claim against the defendants. Because he does not, none of the claims survives screening under *Twombly* and shall therefore be dismissed without prejudice from this action.

### Severance

Counts 1, 2, 3, and 4 survive screening under 28 U.S.C. § 1915A and are subject to further review against the following defendants:

**Count 1** against Defendants Wexford, Furlow, Mulholland, Gross, Allsup, Siddiqui, Shah, Moldenhauer, Lashbrook, Short, Jones, Maue, Waller, Mears, McClure, Holder (John Doe #1), John Doe #2, Jane Doe #5, Jane Doe #6, Jane Doe #7, and Jane Doe #9;

**Count 2** shall receive further review against Defendants Furlow, Yankey, Gross, James, Threadgill, Qualls, Allsup, McClure, and Lashbrook;

**Count 3** shall receive further review against Defendants Furlow, Yankey, Gross, and Lashbrook; and

**Count 4** shall receive further review against Defendants Furlow, Yankey, Gross, Allsup, Lashbrook, Threadgill, Fritsche, Mears, and James.

Before these claims can proceed, the Court must consider whether they are properly joined in a single action. *See* Fed. R. Civ. P. 18-21; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Plaintiff brings two distinct sets of claims in his Complaint. He complains about the denial of adequate medical care in Count 1. He separately complains of ongoing harassment and retaliation by prison officials in Counts 2, 3, and 4. Counts 2, 3, and 4 are properly joined together in the same action under Rules 18 and 20 of the Federal Rules of Civil Procedure. Those claims arise from the same transaction, occurrence, or series of transactions or occurrences. *See* Fed. R. Civ. P. 20. They also involve the same defendants (i.e., Furlow, Yankey, Gross, James, Threadgill, Qualls, Allsup, McClure, Lashbrook, Fritsche, and Mears). The Court will allow them to proceed together in this case.

However, Count 1 shall be severed into a new case. This claim clearly arises from a separate and distinct set of transactions or occurrences related to Plaintiff's broken finger and neck injury. *See* Fed. R. Civ. P. 20(a)(2). Although Count 1 involves a few defendants named in connection with Counts 2, 3, and 4

(Furlow, Mulholland, Gross, Allsup, Lashbrook, and Mears), the vast majority of defendants named in connection with this claim have no connection to Counts 2, 3, and 4 at all (Wexford, Siddiqui, Shah, Moldenhauer, Short, Jones, Maue, Waller, McClure, Holder (John Doe #1), John Doe #2, Jane Doe #5, Jane Doe #6, Jane Doe #7, and Jane Doe #9).  The Court cannot allow Count 1 to proceed against the latter group of defendants because they are not properly joined herein. *See* FED. R. CIV. P. 18(a) (properly joined "party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party.").  Rather than dismissing Count 1 against those defendants, the Court shall exercise its discretion under Rule 21 of the Federal Rules of Civil Procedure and sever Count 1 into a separate action against *all* of the defendants named in connection with that claim, including Wexford, Furlow, Mulholland, Gross, Allsup, Siddiqui, Shah, Moldenhauer, Lashbrook, Short, Jones, Maue, Waller, Mears, McClure, Holder (John Doe #1), John Doe #2, Jane Doe #5, Jane Doe #6, Jane Doe #7, and Jane Doe #9.  The Court will direct the Clerk to open a new case and assess a separate filing fee for the newly-severed matter.

## Pending Motion

In the Complaint, Plaintiff requests a temporary restraining order ("TRO") and/or preliminary injunction.  The Court already considered and denied his request for a TRO.  Although Plaintiff seeks reconsideration of that decision in Plaintiff's Objection to Order (Doc. 4), his request is **DENIED**.  The factual allegations in the Complaint focus on events ending in late March 2018, as it

pertains to his request for medical care, and in late December 2017, as it pertains to the alleged harassment by prison officials. He complains of no more recent misconduct by the defendants as it pertains to his medical needs or harassment. Having failed to set forth facts demonstrating any irreparable harm he now faces, the Court deems it inappropriate, under the facts presented in the original Complaint, to issue a TRO. Such orders are considered a drastic form of relief and are only applicable for up to 14 days. *See* FED. R. CIV. P. 65. With that said, Plaintiff may renew his request for a TRO at any time it becomes necessary to do so as the case proceeds. In addition, the Clerk shall be directed to **ADD** a Motion for Preliminary Injunction to the docket sheet in CM/ECF in this case and the severed case, and that motion shall be referred for further consideration.

## **Disposition**

The Clerk is **DIRECTED** to **ADD** a Motion for Preliminary Injunction to the docket sheet in CM/ECF.

**IT IS HEREBY ORDERED** that **COUNT 1** survives screening under 28 U.S.C. § 1915A against Defendants **WEXFORD, FURLOW, MULHOLLAND, GROSS, ALLSUP, SIDDIQUI, SHAH, MOLDENHAUER, LASHBROOK, SHORT, JONES, MAUE, WALLER, MEARS, McCLURE, HOLDER (JOHN DOE #1), JOHN DOE #2, JANE DOE #5, JANE DOE #6, JANE DOE #7,** and **JANE DOE #9**. However, **COUNT 1** is **DISMISSED** without prejudice against all other defendants for failure to state a claim.

**IT IS ORDERED** that **COUNT 2** survives screening against Defendants **FURLOW, YANKEY, GROSS, JAMES, THREADGILL, QUALLS, ALLSUP, McCLURE,** and **LASHBROOK**. However, **COUNT 2** is **DISMISSED** without prejudice against all other defendants for failure to state a claim.

**IT IS ORDERED** that **COUNT 3** survives screening against Defendants **FURLOW, YANKEY, GROSS,** and **LASHBROOK**. However, **COUNT 3** is **DISMISSED** without prejudice against all other defendants for failure to state a claim.

**IT IS ORDERED** that **COUNT 4** survives screening against Defendants **FURLOW, YANKEY, GROSS, ALLSUP, LASHBROOK, THREADGILL, FRITSCHE, MEARS,** and **JAMES**. However, **COUNT 4** is **DISMISSED** without prejudice against all other defendants for failure to state a claim.

**IT IS ORDERED** that **COUNTS 5, 6, 8,** and **9** are **DISMISSED** without prejudice and **COUNT 7** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 1**, which is unrelated to **COUNTS 2, 3,** and **4**, is **SEVERED** into a single new case, which shall be captioned: **DAVID ROBERT BENTZ, Plaintiff v. WEXFORD HEALTH SERVICE, FURLOW, MULHOLLAND, D. GROSS, K. ALLSUP, M. SIDDIQUI, DOCTOR SHAH, MIKE MOLDENHAUER, J. LASHBROOK, DEDE SHORT, ALEX JONES, K. MAUE, JASON WALLER, MISS MEARS, MIKE McCLURE, C/O**

**HOLDER (JOHN DOE #1), JOHN DOE #2, JANE DOE #5, JANE DOE #6, JANE DOE #7,** and **JANE DOE #9, Defendants.**

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1)   This Memorandum and Order;

(2)   The Complaint (Doc. 1);

(3)   Plaintiff's Application for Leave to Proceed *in forma pauperis* (Doc. 2); and

(4)   Motion for Preliminary Injunction (docket entry only).

Because Plaintiff was granted leave to proceed *in forma pauperis* in this case, he shall be granted leave to proceed as a poor person in the newly-severed case as well.   Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case.   Count 1, the only claim in the newly severed case, will be assigned a new case number and judge before a service order is entered.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNTS 2, 3, and 4*.   This case shall now be captioned: **DAVID ROBERT BENTZ, Plaintiff v. FURLOW, YANKEY, D. GROSS, MR. JAMES, THREADGILL, WILLIAM QUALLS, K. ALLSUP, MIKE McCLURE, FRITSCHE, MISS MEARS,** and **J. LASHBROOK, Defendants.**

**IT IS ORDERED** that the following defendants are **DIMISSED** from this action *with* prejudice: Defendants **WEXFORD HEALTH SERVICE, M. SIDDIQUI, DOCTOR SHAH, MIKE MOLDENHAUER, DEDE SHORT, ALEX JONES, K. MAUE, JASON WALLER, MIKE McCLURE, C/O HOLDER (JOHN**

33

DOE #1), **JOHN DOE #2, JANE DOE #5, JANE DOE #6, JANE DOE #7, JANE DOE #9, MENARD CORRECTIONAL CENTER, ILLINOIS DEPARTMENT OF CORRECTIONS,** and **"UNIDENTIFED JOHN AND JANE DOES**, *et al.***"**

IT IS ORDERED that the following defendants are **DISMISSED** from this action *without* prejudice: Defendants **KELLY PIERCE, SHERRY BENTON, CHRISTA MAHNKEN, TAMERA TURNER, HOLLY HAWKINS, T. SMITH, JANE DOE #8, C/O ANDERSON,** and **JOHN DOE #10.**

With respect to **COUNTS 2, 3,** and **4**, the Clerk of Court shall prepare for Defendants **FURLOW, YANKEY, D. GROSS, MR. JAMES, THREADGILL, WILLIAM QUALLS, K. ALLSUP, MIKE McCLURE, FRITSCHE, MISS MEARS,** and **J. LASHBROOK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If any Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant and the Court will require Defendant to pay the full costs of formal service to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current

work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings, including the Motion for Preliminary Injunction.

Further, this entire matter is hereby **REFERRED** to a **United States Magistrate Judge** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all

unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.06.06
15:08:01 -05'00'

**United States District Judge**